ELECTRONICALLY FILED
2022 Mar 28 PM 1:46
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000201

## IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
## CIVIL DEPARTMENT

| | |
|---|---|
| MidFirst Bank<br><br>Plaintiff,<br><br>vs.<br><br>Annette E. Jeter Sipple;<br>Gary J. Sipple;<br>State of Kansas, Department for Children and Families;<br>Annette Evon Jeter Trust, a Charitable Trust;<br>Annette Evon Jeter Sipple, as Trustee of the Annette Evon Jeter Trust, a Charitable Trust;<br><br>Defendants. | Case No.<br><br>Court Number: |

### PETITION TO FORECLOSE MORTGAGE
### (Pursuant to K.S.A. Chapter 60)

COMES NOW Plaintiff, MidFirst Bank, by and through its attorney, Shari Ashner of the firm of SouthLaw, P.C., and for its cause of action against Defendants states as follows:

1.  Plaintiff is a business organization created and existing by virtue of law.

2.  On March 10, 2009, Annette E. Jeter Sipple made and delivered a promissory note (the "Note") to Home Savings of America, in exchange for good and valuable consideration, in the principal sum of $142,226.00, together with interest.  A copy of the Note is attached as Exhibit "A" and incorporated by reference.

3.  To secure repayment of the Note, on March 10, 2009, Annette E. Jeter Sipple and Gary J. Sipple made and delivered a Mortgage (the "Mortgage") to Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Home Savings of America, its successors and assigns, on the real property legally described as

1

File No. 178838



**LOT 10, BLOCK A, WEST INDIAN HILLS SUBDIVISION NO. 2, IN SHAWNEE COUNTY, KANSAS**, commonly known as 2508 SW Stutley Ct, Topeka, KS 66614 (the "Property").

A copy of the Mortgage is attached as Exhibit "B" and incorporated by reference.

4.  The Mortgage was recorded on March 11, 2009, in Book No. 4680, at Page 74, in the office of the Register of Deeds of Shawnee County, Kansas, and the Mortgage registration tax was paid in full at that time.

5.  Plaintiff is the party entitled to enforce the Note. Plaintiff, directly or through an agent, has possession of the Note and is enforcing the Note as the party in possession.  Plaintiff is the assignee of the Mortgage.  Copies of the Assignments of Mortgage are attached as Exhibits "C" and are incorporated by reference.

| Assignor | Assignee | Recorded Date | Book | Page | Document |
|----------|----------|---------------|------|------|----------|
| Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for Home Savings of America, its successors and assigns | JPMorgan Chase Bank, National Association | September 27, 2012 | 5035 | 203 | 20120019440 |
| JPMorgan Chase Bank, National Association | MidFirst Bank | April 8, 2020 | n/a | n/a | 2020R05466 |

6.  The parties entered into a Loan Modification Agreement, which became effective on February 28, 2013 and changed the payment terms.  A copy of the Loan Modification Agreement is attached as Exhibit "D" and incorporated by reference.

7.  State of Kansas, Department for Children and Families has been named by virtue of a judgment filed November 17, 2010 in the District Court of Shawnee County, Kansas, as Case No. 2010-DM-003608.  The judgment was obtained in the amount of $140.00.  State of Kansas, Department for Children and Families has also been named by virtue of any and all other claims and/or interest it may have or that may become lien(s) against the subject property.  State of Kansas, Department for Children

2

and Families may claim an interest in the subject Property, but any such claim would be junior and inferior to Plaintiff's Mortgage.

8.   Annette Evon Jeter Trust, a Charitable Trust, is named by virtue of being the grantee of two Quit Claim Deeds: the first recorded October 27, 2020 as Document No. 2020R20923; the second recorded April 8, 2021 as Document No. 2021R078346.  Any interest that the Annette Evon Jeter Trust, a Charitable Trust, may claim would be junior and inferior to Plaintiff's Mortgage.

9.   Annette Evon Jeter Sipple, as Trustee of the Annette Evon Jeter Trust, a Charitable Trust, is named by virtue of the Annette Evon Jeter Trust, a Charitable Trust, being the grantee of two Quit Claim Deeds: the first recorded October 27, 2020 as Document No. 2020R20923; the second recorded April 8, 2021 as Document No. 2021R078346.  Any interest that Annette Evon Jeter Sipple, as Trustee of the Annette Evon Jeter Trust, a Charitable Trust, may claim would be junior and inferior to Plaintiff's Mortgage.

10.   Defendant(s) Annette E. Jeter Sipple and Gary J. Sipple are not on active duty in the military service of the United States of America or subject to the provisions of the Service Members Civil Relief Act of 2003, as amended.  Plaintiff lacks or cannot obtain the information necessary to assess the military status or applicability of the Act for any other defendant.

11.   The Monthly installment payments were not made as they became due, commencing with the installment payment due on December 1, 2019 and continuing with each monthly installment due thereafter.  Accordingly, the total amount of indebtedness due under the terms of the Note and Mortgage has been accelerated and is due and payable as follows:

    a.   the unpaid principal balance of the Note in the sum of $119,336.44;

    b.   any deferred principal balance;

    c.   the unpaid interest accruing at the rate provided in the Note from and after November 1, 2019;

    d.   all sums advanced by Plaintiff for title evidence in bringing this action;

3

    e.   all sums advanced or to be advanced by Plaintiff prior to sale for real estate taxes and hazard insurance premiums;

    f.   accrued late charges;

    g.   all sums paid by Plaintiff for Bankruptcy attorney fees and court costs, if applicable, or due from the Defendant prior to sale for insufficient funds charges, property inspections or property maintenance expenses; and

    h.   the costs of this action, including reasonable attorney fees, if allowed.

12. Plaintiff is entitled to have the Mortgage foreclosed as a first and prior lien upon the Property.

13. Each of the defendants has or may claim to have some right, title, interest, lien or claim, in, on or to the Property, but any such claim is junior and inferior and subject and subordinate to the lien of the Mortgage and should be so adjudged.

14. Less than one-third of the original indebtedness secured by the Mortgage has been paid as the original indebtedness was $142,226.00 and the current unpaid principle balance due and owing is $119,336.44. Therefore, under the K.S.A. § 60-2414(m), the redemption period should be fixed at 3 months from the date of the Sheriff's sale; provided, should the Property be or become abandoned or not occupied in good faith, that any such redemption period may be extinguished. Once the redemption period has expired, Plaintiff or the holder of the Certificate of Purchase shall be entitled to a writ of assistance directing the Sheriff to immediately place it or the holder in possession of the Property and its improvements.

15. If any Defendant Borrower is or has been a chapter 13 bankruptcy debtor, and the Plaintiff has obtained relief from the automatic stay imposed by 11 U.S.C. §362 in a bankruptcy proceeding and thereafter a discharge was granted, or the Defendant Borrower converted to a chapter 7 and thereafter a discharge was granted, then that Defendant Borrower will have no personal liability for the debt which is the subject of this action. In the alternative, if the Defendant Borrower was a Chapter 7 debtor and this debt was listed in Defendant Borrower's schedules and not reaffirmed and thereafter a discharge was

4

File No. 178838

granted, then that Defendant Borrower will have no personal liability for the debt which is the subject of this action.

16. Annette E. Jeter Sipple and Gary J. Sipple filed for relief under Chapter 13 of the United States Bankruptcy Code in the District of Kansas in Case No 13-40448-jmk. A Discharge was granted and the case closed on April 12, 2018.

WHEREFORE, Plaintiff prays for judgment *in rem* against the property interests of Annette E. Jeter Sipple, the Annette Evon Jeter Trust, a Charitable Trust, Annette Evon Jeter Sipple, as Trustee of the Annette Evon Jeter Trust, a Charitable Trust, and Gary J. Sipple in the sum of $119,336.44, together with interest at the rate provided in the Note from November 1, 2019, to the date of judgment, and thereafter at the highest rate provided by law until paid; all sums advanced by Plaintiff for title evidence in bringing this action; filing costs; process and service fees; reasonable attorney fees if provided for by statute; all sums paid by Plaintiff or due from the Defendant prior to sale for late charges, insufficient funds charges, property inspections or maintenance expenses; and all sums advanced or to be advanced by Plaintiff prior to the sale for real estate taxes and insurance premiums.

Plaintiff further prays that the Mortgage be declared a first and prior lien on the Property; that its Mortgage be foreclosed; that all junior and inferior liens and Mortgages be barred from claiming any right, title, or interest in the subject property; that the Court order and direct the sale of the Property according to law, subject to a legal redemption period of 3 months; provided, should the Property be or become abandoned or not occupied in good faith, that any such redemption period may be extinguished; for the satisfaction of the money judgment or any balance remaining unpaid; for possession of the Property after the redemption period has expired; and for such other relief as the Court may deem just and equitable.

5

File No. 178838

PETITION TO FORCLOSE MORTGAGE
MidFirst Bank v. Annette E. Jeter Sipple, et al.


SouthLaw, P.C.

/s/ Shari Ashner

Shari Ashner (KS # 14498)
13160 Foster
Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 (Fax)
Shari.Ashner@southlaw.com
Attorney for Plaintiff


THE LAW FIRM OF SOUTHLAW, P.C., A DEBT COLLECTOR, IS ATTEMPTING TO COLLECT A DEBT AS DEFINED BY THE FAIR DEBT COLLECTION PRACTICES ACT AND ANY INFORMATION OBTAINED BY THE LAW FIRM WILL BE USED FOR THAT PURPOSE.

File No. 178838

FHA CASE NO

MARCH 10, 2009
[Date]

EL SEGUNDO
[City]

CALIFORNIA
[State]

MIN

**FHA NOTE**

Loan Number

2508 SOUTHWEST STUTLEY COURT, TOPEKA, KANSAS 66614

[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns  "Lender" means
HOME SAVINGS OF AMERICA, A FEDERAL SAVINGS ASSOCIATION
and its successors and assigns

**2 BORROWER'S PROMISE TO PAY, INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED
FORTY-TWO THOUSAND TWO HUNDRED TWENTY-SIX AND 00/100
Dollars (U S $ 142,226 00           ), plus interest, to the order of Lender  Interest will be charged on unpaid
principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  FIVE AND 500/1000
percent (5  500 %) per year until the full amount of principal has been paid

**3 PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the  Security Instrument ' That Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note

**4 MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
MAY 1, 2009                                Any principal and interest remaining on the first of
APRIL, 2039                                will be due on that date, which is called the maturity date

**(B) Place**

Payment shall be made at 35 E  BROADWAY, LITTLE FALLS, MINNESOTA 56345

or at such other place as Lender may designate in writing by notice to Borrower

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of $ 807  54           This amount will be
part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items
in the order described in the Security Instrument

Borrower Initials 

FHA NOTE  KANSAS
KSFHA NTE 05/01/08

Page 1 of 3

DocMagic *eForms* 800 649 1362
www.docmagic.com



File No. 178838


EXHIBIT
A

**(D)  Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note  [Check applicable box ]

☐   Growing Equity Allonge                    ☐   Graduated Payment Allonge

☐   Other [specify]

## 5    BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on  the first day of any month

## 6    BORROWER'S FAILURE TO PAY

**(A)  Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect  a late charge in the amount of FOUR AND 000/1000                                                    percent (       4 000   %) of the overdue amount of each payment

**(B)  Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default  In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults  This Note does not authorize acceleration when not permitted by HUD regulations As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses for enforcing this Note  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note

## 7    WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor  "Presentment' means the right to require Lender to demand payment of amounts due  "Notice of dishonor  means the right to require Lender to give notice to other persons that amounts due have not been paid

## 8    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at  a different address if Borrower has given Lender a notice of Borrower's different address

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address

## 9    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note  is also obligated to keep all of the promises made in this Note  Lender may enforce its rights under this Note against each person individually or against all signatories together  Any one person signing this Note may be required to pay all of the amounts owed under this Note

Borrower  Initials  _A/S_  ____  ____  ____  ____  ____

FHA NOTE  KANSAS
KSFHA NTE  05/01/08                           Page 2 of 3                    DocMagic *eForms* 800 649 1362
                                                                            www docmagic com

File No. 178838

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note

_____ (Seal)
ANNETTE  E    JETER SIPPLE        -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

see attached allonge

*[Sign Original Only]*

FHA NOTE - KANSAS
KSFHA NTE 05/01/08                    Page 3 of 3              DocMagic *eForms* 800 649 1362
                                                             www docmagic com

9

File No. 178838



# Home Savings℠LLONGE
o f   A m e r i c a

Home Savings Loan # ███████
Investor  CHASE
Investor Loan # ███████

Borrower(s)  ANNETTE E JETER SIPPLE

Property Address  2508 SOUTHWEST STUTLEY COURT
TOPEKA  KANSAS 66614

Note/Loan Amount  $ 142 226 00

Note/Loan Date  MARCH 10  2009

PAY TO THE ORDER OF
JP MORGAN CHASE BANK N A

Without Recourse

HOME SAVINGS OF AMERICA  A FEDERAL SAVINGS ASSOCIATION

By _____
AMBER BARON              INVESTOR SALES SPECIALIST
Name                              Title

**MIDFIRST BANK**
Pay to the Order of
Without Recourse
JPMorgan Chase Bank, NA
By _____
Michelle Gardner, Assistant Treasurer

35 East Broadway  Little Falls, MN  56345   Phone  320-632 5461    Fax  320 632-5463    Website  www homesavingsofamerica com

File No. 178838



Date Recorded: 03/11/2009 02:53:14.950 PM
By _____

Capital Title Ins Co
2641 SW Wanamaker Rd
Topeka, Kansas 66614

——————— [Space Above This Line For Recording Data] ———————

## MORTGAGE

| FHA CASE NO. |
|---|
| ███████ |

Loan Number: ███████
MIN: ███████

THIS MORTGAGE ("Security Instrument") is given on    MARCH 10, 2009
The mortgagor is ANNETTE E. JETER SIPPLE AND GARY J. SIPPLE,
WIFE AND HUSBAND

("Borrower").

This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS** is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

HOME SAVINGS OF AMERICA, A FEDERAL SAVINGS ASSOCIATION    ("Lender")
is organized and existing under the laws of   UNITED STATES                              ,
and has an address of    880 APOLLO STREET, SUITE 241, EL SEGUNDO,
CALIFORNIA 90245

Borrower owes Lender the principal sum of    ONE HUNDRED FORTY-TWO THOUSAND TWO
HUNDRED TWENTY-SIX AND 00/100        Dollars (U.S. $ 142,226.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   APRIL 1, 2039        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in
SHAWNEE                    County, Kansas:

Borrower Initials: _____

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA 11/01/08                            Page 1 of 8                    DocMagic *eForms* 800-649-1362
                                                                              www.docmagic.com



File No. 178838

| EXHIBIT |
|---|
| **B** |

LOT 10, BLOCK A, WEST INDIAN HILLS SUBDIVISION NO. 2, IN SHAWNEE COUNTY, KANSAS.
A.P.N.: 1430703001058390

which has the address of 2508 SOUTHWEST STUTLEY COURT
                                                        [Street]
        TOPEKA                , Kansas        66614        ("Property Address"):
        [City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Borrower  Initials: _____ _____ _____ _____ _____ _____

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA  11/01/08                        Page 2 of 8                        DocMagic eFormas 800-649-1362
                                                                              www.docmagic.com

File No. 178838

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations

Borrower Initials: _____ _____ _____ _____ _____

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA 11/01/08                               Page 3 of 8                    DocMagic *eForms* 800-649-1362
                                                                                              www.docmagic.com

13

File No. 178838

concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.   **Condemnation.**   The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.   **Charges to Borrower and Protection of Lender's Rights in the Property.**   Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

(a)   **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)   **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

Borrower Initials: _____

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA 11/01/08                                    Page 4 of 8                     DocMagic *eForms* 800-649-1362
www.docmagic.com

14

(c)  **No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)  **Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  **Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                        from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  **Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  **Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender  and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  **Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  **Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect  other provisions of this Security Instrument

Borrower Initials: _____ _____ _____ _____ _____

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA  11/01/08

Page 5 of 8

*DocMagic* *eRorms* 800-649-1362
www.docmagic.com

File No. 178838

or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

    **15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

    **16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

    Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

    As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

### NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

    **17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

    If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

    Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

    Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

    **18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence, to the extent allowed by applicable law.

    If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

    **19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

Borrower Initials: _____   _____   _____   _____

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA 11/01/08

Page 6 of 8

DocMagic *eForms* 800-649-1362
www.docmagic.com

16

File No. 178838

**20.  Waiver of Redemption.**  Borrower waives all rights of redemption to the extent allowed by law.

**21.  Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider                 ☐ Graduated Payment Rider       ☐ Growing Equity Rider
☐ Planned Unit Development Rider    ☐ Adjustable Rate Rider         ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider        ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
ANNETTE E. JETER SIPPLE    -Borrower          GARY J. SIPPLE             -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

Witness:                                        Witness:

_____                 _____

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA  11/01/08                    Page 7 of 8              DocMagic eForms 800-649-1362
                                                                     www.docmagic.com

17

File No. 178838

——————————— [Space Below This Line For Acknowledgment] ———————————

State of Kansas

County of __SHAWNEE__ )
                       )

This instrument was acknowledged before me on _____ MARCH 10, 2009 _____

by ANNETTE E. JETER SIPPLE  AND GARY J. SIPPLE,

        WIFE AND  HUSBAND

_____

LORRAINE K. JONES
MY COMMISSION EXPIRES
November 12, 2009

_____
Signature of notarial officer

Notary Public
Title

(Seal)

My commission expires: __11-12-2009__

After Recording Return To:
HOME SAVINGS OF AMERICA
35 EAST BROADWAY
LITTLE FALLS, MINNESOTA 56345

FHA KANSAS MORTGAGE - MERS
KSMTGZ.FHA 11/01/08

Page 8 of 8

DocMagic *Phone*: 800-649-1362
www.docmagic.com

18

File No. 178838

Book 005035 Page 0203
Page 1 of 1

Shawnee County, Kansas
Register of Deeds
Marilyn L. Nichols
Book: 5035 Pages 203
Line #: 201200013440
Date Recorded: 09/27/2012 01:58:39.500 PM

Loan #:

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.
FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME SAVINGS OF AMERICA, ITS SUCCESSORS AND ASSIGNS PO BOX 2026, FLINT, MI, 48501, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 03/10/2009, was executed by ANNETTE E. JETER SIPPLE AND GARY J. SIPPLE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, and was recorded on 03/11/2009 in Book 4680, Page 74, and/or as Document # n/a of the records of the Register of Deeds for SHAWNEE County, Kansas. . LOT 10, BLOCK A, WEST INDIAN HILLS SUBDIVISION NO. 2, IN SHAWNEE COUNTY, KANSAS.

Dated on _09 / 10_ /2012 (MM/DD/YYYY).
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME SAVINGS OF AMERICA, ITS SUCCESSORS AND ASSIGNS

By: _Melissa J R Cay_
_Melissa J. Riley_
**VICE PRESIDENT**

STATE OF LOUISIANA    PARISH OF OUACHITA
On _09 / 10_ /2012 (MM/DD/YYYY), before me appeared _Melissa J. Riley_
to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME SAVINGS OF AMERICA, ITS SUCCESSORS AND ASSIGNS and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Helen F Lake_
_Helen T. Lake_
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Document Prepared By/Return To: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CHASE        MIN                          MERS PHONE 1-888-679-6377    [C]
FRMRS1



File No. 178838

**2020R05466**

**SHAWNEE COUNTY, KANSAS**
**REGISTER OF DEEDS**
**REBECCA J. NIOCE**
**DATE RECORDED:**
**04/08/2020 01:10:37 PM**

After recording please return to:
JPMorgan Chase Bank, N.A.
Collateral Trailing Docs, Chase Recording
Center
700 Kansas Lane, RE-MC 8000
Monroe, LA 71203

————————[Space Above This Line For Recording Data]————————

Loan No:

# KANSAS ASSIGNMENT OF MORTGAGE

For Value Received, JPMorgan Chase Bank, National Association, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto MidFirst Bank, a Federally Chartered Savings Association, (herein "Assignee"), whose address is 999 NW Grand Boulevard, Suite 100, Oklahoma City, OK 73118, a certain Mortgage dated March 10, 2009 and recorded on March 11, 2009, made and executed by ANNETTE E. JETER SIPPLE AND GARY J. SIPPLE, to and in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, ("MERS") AS NOMINEE FOR HOME SAVINGS OF AMERICA, ITS SUCCESSORS AND ASSIGNS, upon the following described property situated in SHAWNEE County, State of Kansas:
Property Address: 2508 SOUTHWEST STUTLEY COURT, TOPEKA, KS 66614

LOT 10, BLOCK A, WEST INDIAN HILLS SUBDIVISION NO. 2, IN SHAWNEE COUNTY, KANSAS.

such Mortgage having been given to secure a Note in the Principal amount of **One Hundred Forty Two Thousand Two Hundred Twenty Six and 00/100ths ($142,226.00)**, which Mortgage is of record in Book, Volume or Liber No. 4680, at Page 74 (or as No. 20090004688), in the Office of the Register of Deeds of SHAWNEE County, State of Kansas.

Assignor acknowledges that all of its interest in and to the Mortgage, and corresponding obligations, if any, were transferred to the Assignee, as defined herein, on a date prior to **March 3, 2020**.

| | | |
|---|---|---|
| Kansas Assignment of Mortgage | | |
| JPMorgan Chase Bank N.A. Project W5035 | Page 1 of 2 | L73108KS 01/12 Rev. 02/14 |

File No. 178838

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 4-1-2020 .

Assignor:
**JPMorgan Chase Bank, National Association**

By: _____

l'eisha C Merrell

Its: **Vice President**

**ACKNOWLEDGMENT**

State of Louisiana §
§
Parish of Ouachita §

On this 1st day of April 2020 , before me appeared l'eisha C Merrell , to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the Vice President , of JPMorgan Chase Bank, National Association, and that the seal affixed to said instrument is the corporate seal of said entity and that the instrument was signed and sealed on behalf of the said entity by authority of its board of directors and that l'eisha C Merrell acknowledged the instrument to be the free act and deed of the said entity.

Eva Reese
Ouachita Parish, Louisiana
Lifetime Commission
Notary Public ID # 17070

Signature of Person Taking Acknowledgment

_Eva Reese_
Printed Name

_Notary Public_
Title or Rank

N/A
Serial Number, if any:

(Seal).

_Lifetime_
My Commission Expires:

Kansas Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W5035

Page 2 of 2

173108KS 01/12 Rev. 02/14

21

File No. 178838

2014R16994

**SHAWNEE COUNTY, KANSAS**
**REGISTER OF DEEDS**
**REBECCA J. NIOCE**
**DATE RECORDED:**
**10/02/2014 10:09:25 AM**
**PAGES: 10**
**DEBT: 0**

Recording Requested By/Return To:
**JPMORGAN CHASE BANK, N.A.**
**CHASE RECORDS CENTER**
**RE: COLLATERAL TRAILING**
**DOCUMENTS**
**PO BOX 8000**
**MONROE, LA 71203**
**(800) 848-9380**

———————— [Space Above This Line For Recording Data] ————————

# LOAN MODIFICATION AGREEMENT

This modification adds the amount of $5,124.51 to the current principal balance of $135,592.87, and represents capitalized interest, fees, expenses, and other amounts due under the terms of the original Mortgage/Deed of Trust/Trust Deed. The new unpaid principal balance of the loan, as modified, is $140,717.38. The original principal balance of the loan on which mortgage/recording taxes were previously paid was $142,226.00

Loan Number

Borrower ("I")[1]: **ANNETTE E JETER SIPPLE AND GARY J SIPPLE WIFE AND HUSBAND**
Lender ("Lender"): **JPMORGAN CHASE BANK, NA**
Date of First Lien Security Instrument ("Mortgage") and Note ("Note"): **MARCH 10, 2009**
Loan Number: ("Loan")
Property Address: 2508 SW **STUTLEY CT, TOPEKA, KANSAS 66614** ("Property")

**LEGAL DESCRIPTION:**
**LOT 10, BLOCK A, WEST INDIAN HILLS SUBDIVISION NO. 2, IN SHAWNEE COUNTY, KANSAS.**
**APN: 143-07-0-30-01-058.39**

**REFERENCE NUMBERS OF DOCUMENTS MODIFIED:**
**RECORDED MARCH 11, 2009 VOLUME 4680 PAGE 74**
**Tax Parcel No: 143-07-0-30-01-058.39**

**NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty.**

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and

——————————————

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

WF101 LOAN MODIFICATION AGREEMENT – CHAMP    ver. 02_21_2013_11_30_45          Page 1 of 8 pages



22



**Loan Number** ███████████

supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it.

1.   **My Representations.** I represent to the Lender and agree:

   A.   I am experiencing a financial hardship, and as a result, am either in default under the Loan Documents or a default is imminent.

   B.   The Property is neither in a state of disrepair, nor condemned.

   C.   There has been no change in the ownership of the Property since I signed the Loan Documents.

   D.   I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

   E.   I have provided documentation for **all** income that I earn.

   F.   All documents and information I provide pursuant to this Agreement are true and correct.

2.   **The Modification.** The Loan Documents are hereby modified as of **APRIL 01, 2013** ("Modification Effective Date"), and all unpaid late charges are waived. The Lender agrees to suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

   A.   The Maturity Date will be: **MARCH 01, 2043.**

   B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts toward taxes, insurance, or other assessments.   The new principal balance of my Note is **$140,717.38** ("New Principal Balance").

   C.   The Interest Bearing Principal Balance will re-amortize over **360** months.

      Interest will begin to accrue as of **MARCH 01, 2013.** The first new monthly payment on the New Principal Balance will be due on **APRIL 01, 2013,** and monthly on the same date thereafter.

**WF101 LOAN MODIFICATION AGREEMENT – CHAMP    ver. 02_21_2013_11_30_45**          Page 2 of 8 pages

███████████████████████████████████████████

File No. 178838

**Loan Number**

My payment schedule for the modified Loan is as follows:

I promise to pay interest on the New Principal Balance at the rate of **3.500**% annually. I promise to make consecutive monthly payments of principal and interest in the amount of **$631.88**, which is an amount sufficient to amortize the New Principal Balance over a period of **360 months**.

The above terms in this Section 2.C shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate.

D.  I agree to pay in full (i) the New Principal Balance, and (ii) any other amounts still owed under the Loan Documents,  by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire New Principal Balance, or the Maturity Date.

E.  I will be in default if I do not (i) pay the full amount of a monthly payment on the date it is due, or (ii) comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the New Principal Balance will be the rate set forth in Section 2.C.

3.  **Additional Agreements.** I agree to the following:

A.  That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

B.  To comply, except to the extent that they are modified by this Agreement, or by the U.S. Bankruptcy Code, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C.  That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms.

D.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is

WF101 LOAN MODIFICATION AGREEMENT – CHAMP     ver. 02_21_2013_11_30_45                    Page 3 of 8 pages

24

**Loan Number** ▮▮▮▮▮▮

sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F.   That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G.   If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H.   All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I.   That, if the Borrower is in bankruptcy upon execution of this document, the Borrower will cooperate fully with the Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. The Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

J.   If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

K.   That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

L.   I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized

WF101 LOAN MODIFICATION AGREEMENT – CHAMP    ver. 02_21_2013_11_30_45          Page 4 of 8 pages

File No. 178838

**Loan Number** ████████

servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

WF101 LOAN MODIFICATION AGREEMENT – CHAMP    ver. 02_21_2013_11_30_45          Page 5 of 8 pages

File No. 178838

**Loan Number**

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, NA And ANNETTE E JETER SIPPLE AND GARY J SIPPLE WIFE AND HUSBAND, LOAN NUMBER WITH A MODIFICATION EFFECTIVE DATE OF April 01, 2013

In Witness Whereof, the Borrower(s) have executed this agreement.

The undersigned hereby acknowledge that the signatures below include the Borrowers on the Loan, and those of any non-borrower co-owner(s) of the Property, or a non-borrower spouse or domestic partner of a Borrower with rights of dower/curtesy/homestead and/or community property under applicable law. Such additional persons are signing solely to evidence their agreement that all of their right, title and interest in the Property is subject and subordinate to the terms and conditions of this Agreement and the Loan Documents.

ANNETTE E JETER SIPPLE AKA ANNETTE E JETTER SIPPLE

Date: 2-28-2013

GARY J SIPPLE

Date: 2/28/2013

State of KANSAS
(County) of Shawnee )

This Instrument was acknowledged before me on 2/28/13 by ANNETTE E JETER SIPPLE AKA ANNETTE E JETTER SIPPLE and GARY J SIPPLE.

(Seal, if any)

SARAH WAGGONER
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 3/1/14

(Signature of notarial officer)

Notary Republic
Title (and Rank)

My appointment expires: 3/1/14

WF101 LOAN MODIFICATION AGREEMENT – CHAMP    ver. 02_21_2013_11_30_45          Page 6 of 8 pages

27

File No. 178838

**Loan Number** ████████

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, NA And ANNETTE E JETER SIPPLE AND GARY J SIPPLE WIFE AND HUSBAND, LOAN NUMBER ████████ WITH A MODIFICATION EFFECTIVE DATE OF April 01, 2013

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, NA**

By: _____

Printed Name:

       Brenda Nevarez-Quiroga
          Vice President

Date:              3·11·13

WF101 LOAN MODIFICATION AGREEMENT – CHAMP   ver. 02_21_2013_11_30_45       Page 7 of 8 pages

████████████████████████████

File No. 178838

Loan Number

State of COLORADO
County of DENVER

The foregoing instrument was acknowledged before me this ___11___ day of ___March___ 2013 by _____Brenda Nevarez-quiroga_____, Vice President of JPMORGAN CHASE BANK, N.A. a national banking association.

_____
(signature of person taking acknowledgment)

Printed Name:

[SEAL]

_____
(title or rank)

_____
(serial number, if any)

My Commission expires: ___2·3·15___

KENNEDY SMITH-FLIESHER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20114004649
MY COMMISSION EXPIRES FEBRUARY 3, 2015

WF101 LOAN MODIFICATION AGREEMENT – CHAMP    ver. 02_21_2013_11_30_45          Page 8 of 8 pages

29

File No. 178838

· Loan number: ███

## KANSAS MORTGAGE REGISTRATION FEE AFFIDAVIT

Pursuant to K.S.A. 79-3102 (d)(3)

STATE OF LOUISIANA

PARISH OF OUACHITA

I, Robert Jacob Bice state as follows:

I make this affidavit based on my review of JPMorgan Chase Bank, National Association's ("Chase") business records, including copies of loan origination documents, and from my own personal knowledge of how such records are kept and maintained. The representations set forth in this affidavit are made to assist with the calculation of mortgage recording tax pursuant to K.S.A. 79-3102 (d)(3).

## LIST MORTGAGES/INSTRUMENTS WHERE FEE PREVIOUSLY PAID:

| Lender's Name | Document | Book | Page | Amt. of Indebtedness |
|---|---|---|---|---|
| Home Savings of America | n/a | 4680 | 74 | $142,226.00 |
| Assignment: Home Savings of America to JPMorgan Chase Bank, National Association | n/a | 5035 | 203 | $0.00 |
| | | | | |
| Total Indebtedness Paid On | | | | $142,226.00 |

## NEW MORTGAGE/INSTRUMENT TO BE RECORDED:

| Lender's Name | Additional Indebtedness |
|---|---|
| JPMorgan Chase Bank, N.A. | $0.00 |

Version 1.0

30

File No. 178838

·Loan number: ███

Date: <u>September 26,  2014</u>

Affiant's Signature:

X _____ Robert Jacob Bice _____

**Robert Jacob Bice**

**TITLE:  Vice President**

**COMPANY:  JPMorgan Chase Bank, National Association**

**SUBSCRIBED AND SWORN TO** before me on

this __26th__ day of __September__, 20__14__, by

_Robert  Jacob Bill_

_____, **Notary Public**

Brandon Fuller, Notary ID # 131886
**Ouachita Parish, Louisiana**

**Lifetime Commission**

(NOTARY SEAL)

**Version 1.0**

31

File No. 178838